IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW BANSEPT | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 18-04679 |
| | : |
| G&M AUTOMOTIVE, | : |
| *d/b/a* MCGARRIGLE'S | : |
| AUTO REPAIR, ET AL. | : |

**MEMORANDUM**

**SURRICK, J.**                                                                                 **AUGUST 26, 2021**

Plaintiff is a tow-truck driver who, in addition to working his regular eight-hour shift days for Defendants, was on call twenty-four hours a day for more than six months of the year to tow vehicles for Defendants. He contends that he should be compensated for these on-call hours as overtime pay under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq*.; the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. and Cons. Stat. Ann. §§ 333.101-333.115; and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. and Cons. Stat. Ann. §§ 260.1-260.45. Defendants include the service station that employed Plaintiff as its tow-truck driver, and the owners of the service station. Defendants seek summary judgment on Plaintiff's overtime payment claims. (ECF No. 34.) Plaintiff seeks partial summary judgment with respect to certain affirmative defenses and with regard to the liability of Defendant Michelle McGarrigle. (ECF No. 35.) For the following reasons, Defendants' Motion will be granted in part and denied in part and Plaintiff's Motion will be granted in part and denied in part. Judgment will be entered in favor of Defendant Michelle McGarrigle because she is not an "employer" under the FLSA, PMWA and WPCL. However, factual disputes preclude entering judgment in favor of Defendants G&M Automotive, Capital Towing, and Thomas

McGarrigle on the issue of whether Plaintiff's on-call time is compensable under the FLSA and the PMWA.[1]

## I.   BACKGROUND[2]

Plaintiff was employed by Defendants as a full-time tow truck driver from April 2015 through October 2018. (Bansept Aff. ¶ 5, Pl.'s SJ Resp. Ex. D, ECF No. 35.) His regular working hours were Monday through Friday from 8:00 a.m. to 4:00 p.m. (Am. Compl. ¶ 26, ECF No. 7; Defs.' Answer ¶ 26, ECF No. 17.) During this time, he would perform tows and, if needed, clean up accident scenes. (Bansept Dep. 25, Pl's SJ Resp. Ex. B, ECF No. 37.) When there were no tow calls, Plaintiff provided general assistance around the service station and cleaned the tow trucks. (*Id.* at 29-30.)

In addition to his regular forty-hour workweek, Plaintiff was also required to be on call to perform towing services. Six months of the year (February, April, June, August, October, and December), Defendants required Plaintiff to be on call twenty-four hours a day, seven days a week to service Defendants' contract with the Springfield Township Police Department. (Defs.' Undisputed Facts ¶ 12, ECF No. 23-2; Pl.'s SJ Resp. 2; Tom McGarrigle Dep. 44, Defs.' SJ Mot. Ex. C.) In addition, Defendants required Plaintiff to be on call every third day on a rolling basis for 24 hours, from 7:00 a.m. to 6:59 a.m. the following day, to service Defendants' contract with the Marple Township Police Department. (Bansept Dep. 57.)

Initially, Defendants paid Plaintiff an hourly rate of $12.00; however, Plaintiff subsequently requested and received a raise of $15.00 per hour. (*Id.* at 42; Tom McGarrigle

---

[1] Defendant Capital Towing is the trade name for G&M Automotive, Inc. d/b/a MGarrigle's Auto Repair.

[2] We view the facts and reasonable inferences therefrom in the light most favorable to Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Dep. 35.) If Plaintiff performed towing services during his regular working hours, Defendants paid Plaintiff the hourly rate. However, if Plaintiff performed towing services outside of his regular working hours while on call, Defendants only paid Plaintiff 40% of the tow fee ($60) and 40% of the labor charge. (Bansept Dep. 33; Tom McGarrigle Dep. 59.) When Plaintiff did not receive any tow calls while on call outside of his regular working hours, Defendants did not pay Plaintiff any additional monies. (Am. Compl. ¶ 50; Answer ¶ 50.)

While Plaintiff was on call, he carried a "tow phone" provided by Defendants. (Bansept Dep. 32.) If he received a call to perform a tow service, he had to respond within fifteen minutes. (*Id*. at 64.) While on call, he could not consume alcohol. (*Id*. at 62.) Plaintiff alleges that he was the sole full-time tow truck driver for Defendants, and that he performed nearly all the tows for Defendants during the time of his employment. (Bansept Aff. ¶ 5.) He states that the number of tow calls he would receive during his on-call hours was random and unpredictable, but he estimates that he responded to approximately one to two tow truck calls a day while on call. (*Id*. ¶ 3.) Plaintiff had to respond to the tow calls even when he was busy or sick. (Bansept Dep. 54.) He was reprimanded by Tom McGarrigle's son, Dan, if he did not respond to the tow calls when he was on call. (*Id*. at 55.) Plaintiff believed that he would lose his job if he did not respond. (*Id*. at 54.)

Being on call was a significant disruption to Plaintiff's personal life. He could not leave Springfield township because if he received a tow call, he would have to respond within fifteen minutes. (*Id*. at 68.) He was restricted in engaging in personal activities, claiming he could not go shopping or on dates because they could be (and were) interrupted by taking a tow call. (*Id*.) He had to leave a medical appointment to respond to a tow call. (*Id*. at 76.) He even received tow calls on Christmas day. (*Id*. at 69.) He once complained to G&M Automotive owners, Tom

McGarrigle and Michelle McGarrigle, about the burden of being on call for the Marple Township contract and the Springfield Police contract at the same time, saying that it was "too much." (*Id*. at 48.) Plaintiff states that Defendants did nothing to remedy his concerns. (*Id*.) In October 2018, Plaintiff resigned from his employment with Defendants. (*Id*. at 49.) This lawsuit followed shortly after Plaintiff left.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). "[A] factual dispute is material only if it might affect the outcome of the suit under governing law." *Id*. The court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc*., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co*., 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a

fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *see also Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## III. DISCUSSION

Plaintiff asserts a claim against Defendants for unpaid wages under the FLSA, PMWA, and the WPCL. He contends that he should have been paid his regular hourly rate for the time that he was on call. Defendants move for summary judgment, arguing: (1) that Defendant Michelle McGarrigle is not an "employer" for purposes of the FLSA, PMWA, and WPCL, and therefore she cannot be held jointly and severally liable to Plaintiff; and (2) that Plaintiff's on-call time is not compensable under the FLSA, PMWA, and the WPCL.[3] Defendants are correct that Michelle McGarrigle is not liable as an "employer" under the applicable statutes. However, the record evidence in this case, construed in Plaintiff's favor, includes many factual disputes as to whether Plaintiff's on-call time is compensable under the FLSA and the PMWA. These factual disputes are appropriate for a jury's consideration. The record evidence does not support Plaintiff's claim under the WPCL.

---

[3] Plaintiff also seek partial summary judgment on certain of Defendants' stated affirmative defenses. In particular, he seeks judgment as to the First, Third, Fourth, Sixth, Seventh, Ninth and Tenth Affirmative Defenses. Defendants offer no argument in opposition to Plaintiff's request and do not dispute that judgment should be entered in favor of Plaintiff on these affirmative defenses. (Defs.' Reply 1, ECF No. 36.)

### A.  Factual Disputes Preclude Summary Judgment on Plaintiff's Claims for Wages under the FLSA and the PMWA, but not under the WPCL

#### 1.  FLSA and PMWA

The FLSA was enacted to "protect covered workers from substandard wages and oppressive working hours." *Friedrich v U.S. Comput. Servs*., 974 F.2d 409, 412 (3d Cir. 1992). Under the FLSA, employers are required "to pay their employees at least a specified minimum hourly wage for work performed . . . and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week." *De Asencio v. Tyson Foods, Inc*., 342 F.3d 301, 306 (3d Cir. 2003) (citing 29 U.S.C. §§ 206, 207). Under the FLSA, the minimum hourly wage is $7.25. 29 U.S.C. § 206(a)(1)(C). Similarly, the PMWA provides that "[e]very employer shall pay to each of his or her employes wages for all hours worked at a rate of not less than . . . the minimum wage set forth in the Fair Labor Standards Act of 1938," 43 Pa. Stat. and Cons. Stat. Ann. § 333.104(a.1); and that employees shall receive overtime wages of "not less than one and one-half times" their regular wage for any hours worked over forty hours in a workweek. 43 Pa. Stat. and Cons. Stat. Ann. § 333.104(c). Because of the similarities between the PMWA and the FLSA, Pennsylvania courts analyze overtime and minimum wage violations of the PMWA and the FLSA under the same framework. *See e.g.*, *Bedolla v. Brandolini*, No. 18-146, 2018 WL 2291117, at *4 (E.D. Pa. May 18, 2018); *see also Ford-Greene v. NHS, Inc*., 106 F. Supp. 3d 590, 612 (E.D. Pa. 2015).

The parties do not dispute that our consideration of whether Plaintiff's on-call hours are compensable is governed by the *Ingram* factors. In *Ingram v. County of Bucks*, 144 F.3d 265, 268 (3d Cir. 1998), the Third Circuit held that an on-call employee, who is not required to remain on his employer's premises, may be entitled to compensation if the employee "finds his time on-call . . . is so restricted that it interferes with personal pursuits." In assessing whether an

6

employee's on-call time spent off premises is compensable in the context of a summary judgment motion, the following four factors are considered:

> (1) whether the employee may carry a beeper or leave home;
> (2) the frequency of calls and the nature of the employer's demands;
> (3) the employee's ability to maintain a flexible on-call schedule and switch on-call shifts; and
> (4) whether the employee actually engaged in personal activities during on-call time.

*Id*.

The Third Circuit has cautioned that "the issue of how a plaintiff spends his on-call time is one of fact and, therefore, cannot be resolved on summary judgment." *Id*. at 267. Summary judgment is appropriate only in the absence of any "genuine issues of material fact as to how a plaintiff spends his on-call time." *Id*. Applying the *Ingram* factors, and construing facts and inferences in favor of Plaintiff, as we must, confirms that genuine issues of material fact exist as to how Plaintiff spent his on-call time.

The parties do not dispute that the first factor weighs in favor of finding that the on-call time was not compensable. Plaintiff maintained a tow phone provided by Defendants. This permitted him to be at home and engage in personal endeavors during his on-call time.

With regard to the second *Ingram* factor—the frequency of calls and the nature of the employer's demand—the record contains a significant factual dispute. Defendants contend that Plaintiff responded to approximately five to six tow calls per week while working on call. (Tom McGarrigle Dep. 38.) However, Plaintiff stated that he responded to, on average, one to two calls per day. This would result in approximately seven to fourteen calls per week. A jury must decide who to believe, and whether the frequency of the tow calls "is so restricted that it interferes with personal pursuits." *Ingram*, 144 F.3d at 268. In addition, Plaintiff was required to respond to a tow call within 15 minutes—a response time that necessarily causes interruptions

in Plaintiff's personal schedule.  *See, e.g.*, *Renfro v. City of Emporia*, 948 F.2d 1529, 1537 (10th Cir. 1991) (finding on-call time compensable when firefighters had to report within twenty minutes and were called on average three to five times per day).

Factual disputes are also present when considering the third *Ingram* factor—the employee's ability to maintain a flexible on-call schedule and switch on-call shifts.  Plaintiff states that he was the only tow truck operator for G&M Automotive who handled tow calls during off hours.  Therefore, there was no ability to switch shifts with anyone else.  Plaintiff was unaware of any procedure by which he could request that someone else fill in on a tow call if he was busy or otherwise unable to handle it.  Plaintiff was reprimanded for not responding adequately and feared he would lose his job if he did not respond to a tow call.  According to Plaintiff, there was no flexibility in his on-call schedule.  Defendants, however, contend that there was flexibility, and that if Plaintiff could not handle a call, then Tom McGarrigle or his son would respond in Plaintiff's place.

Finally, factual disputes are present as to the fourth *Ingram* factor—whether Plaintiff actually engaged in personal activities during his on-call time.  There is no dispute that Plaintiff engaged in some personal activities during his on-call hours, such as shopping, and eating out at restaurants.  However, he could not leave Springfield Township and testified that he stopped engaging in certain personal activities out of fear that they would be interrupted with a tow call.  On balance, consideration of the *Ingram* factors weighs in favor of denying summary judgment.  It is for the jury and not this Court to resolve the factual disputes surrounding Plaintiff's on-call time.

        *2.*    *WPCL*

"The Wage Payment and Collection Law provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (Pa. 1997). The WPCL "does not create a right to compensation . . . . [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003), as amended (Nov. 14, 2003). The record contains no evidence of a contractual arrangement—written or oral—obligating Defendants to pay Plaintiff hourly wages during the time Plaintiff worked on call. Instead, Plaintiff testified that Defendants promised to pay him 40% of any money earned by Defendants for tows completed during on-call hours. Plaintiff does not allege that Defendants failed to pay him the promised 40% of those tow charges. The evidence does not support a claim under the WPCL. *See, e.g.*, *Mackereth v. Kooma, Inc.*, No. 14-04824, 2015 WL 2337273, at *10 (E.D. Pa. May 14, 2015) (dismissing plaintiff's WPCL claim where plaintiff failed to allege "the existence of a contractual right, either express or implied, to recover the wages they seek"). Accordingly, summary judgment will be entered in favor of Defendants on this claim.

    **B.**    **Defendant Michelle McGarrigle is Not an "Employer" under the FLSA or the PMWA**

The FLSA prohibits an "employer" from failing to pay overtime compensation. 29 U.S.C. § 207(a)(1). The Act defines an "employer" as including "any person acting directly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The PMWA provides a similar definition: "any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an

employer in relation to any employee." 43 Pa. Stat. and Cons. Stat. Ann. § 333.103(g).  The analyses for determining whether individuals are deemed employers are the same under the FLSA and the PMWA.  *See Schneider v. IT Factor Prods.*, No. 13-5970, 2013 WL 6476555, at *3-4 (E.D. Pa. Dec. 10, 2013).

Under the FLSA, more than one employer can be jointly liable to a plaintiff.  Joint employment liability may exist "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." m29 C.F.R. § 791.2(b)(3); *see also In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation*, 683 F.3d 462 (3d Cir. 2012).

When considering whether a joint employment relationship exists between two or more employers under the FLSA, courts use the "economic reality" test.  *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 418 (3d Cir. 2012).  Under this test, courts examine the totality of the circumstances and consider four non-exhaustive factors to assist in the determination:  "whether the individual (1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Haybarger*, 667 F.3d at 418 (citation omitted).  No one factor is dispositive, and courts are encouraged to consider any relevant evidence in making the determination.  *Id*.

The evidence in the record does not support holding Michelle McGarrigle liable under the FLSA and the PMWA.  Michelle McGarrigle is the wife of Defendant Tom McGarrigle, and a 49% owner of G&M Automotive.  (Michell McGarrigle Dep. 20, Defs.' SJ Mot. Ex. F.)  She is

a part-time bookkeeper for G&M Automotive. (*Id*. at 10.) Her duties include paying bills, keeping track of payroll, answering phones, if needed, and making bank deposits. (*Id*.) She works approximately ten to twelve hours per week. (*Id*. at 11.) She does not set wages or have any role in creating attendance policies and procedures. (*Id*. at 28.) Her husband, Tom, handles these tasks. (*Id*.) Michelle McGarrigle also does not have the authority to hire and fire individuals and has never been involved in employee discipline. (*Id*. at 29-30.) Even Plaintiff stated that he never witnessed Michelle McGarrigle hire, fire, or discuss wages with anyone employed at G&M Automotive. (Bansept Dep. 41.) After consideration of the factors under the economic reality test, we are satisfied that Defendant Michelle McGarrigle is not an "employer" for purposes of the FLSA or the PMWA.[4]

---

[4] Although the WPCL claims have already been dismissed, we note that Michelle McGarrigle is also not an employer under the WPCL. The WPCL defines "employer" as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 Pa. Stat. and Const. Stat. Ann. § 260.2a. "To hold an 'agent or officer' personally liable for unpaid wages, 'evidence of an active role in decision making is required.'" *Int'l Ass'n of Theatrical Stage Employees, Local Union No. 3 v. Mid-Atl. Promotions, Inc*., 856 A.2d 102, 105 (Pa. Super. Ct. 2004) (citing *Mohney v. McClure*, 568 A.2d 682, 685 (1990)). There is no evidence that Michelle McGarrigle took an active role in decision-making. The fact that she is a shareholder of the company is simply not enough. *See Mancini v. Concorde Grp*., No. 2233 EDA 2013, 2014 WL 10575398, at *12 (Pa. Super. Ct. Sept. 25, 2014) ("As WPCL liability cannot be imposed upon Bradley based solely upon her status as an officer and shareholder of Concorde, we conclude the trial court erred in finding Bradley liable under the WPCL during the summary judgment phase of the underlying proceedings."); *Britton v. Whittmanhart, Inc*., No. 09-1593, 2009 WL 1855325, at *3 (E.D. Pa. June 25, 2009).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted in part and denied in part. Judgment will be entered in favor of Defendant Michelle McGarrigle. Defendants' Motion for Summary Judgment is denied in all other respects. Plaintiff's request for judgment as to the First, Third, Fourth, Sixth, Seventh, Ninth and Tenth Affirmative Defenses Affirmative Defenses is granted.

An appropriate Order follows.

BY THE COURT:

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**